IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KEVIN DOYLE<br><br>Plaintiff,<br><br><br>vs.<br><br><br>JO ANNE B. BARNHART, Commissioner of the Social Security Administration,<br><br>Defendant | ORDER AFFIRMING COMMISSIONER'S DECISION DENYING DISABILITY INSURANCE BENEFITS<br><br><br><br>Case No. 2:06-CV-00018-PGC |

Plaintiff Kevin Doyle brings this action before the court to review the Social Security Administration Commissioner's final decision denying his request for Disability Insurance Benefits and Supplemental Security Income benefits under the Social Security Act. Mr. Doyle brings this action pursuant to 42 U.S.C. § 405(g) and asserts that the Administrative Law Judge wrongly rejected his disability and benefits claim. The Commissioner argues that the ALJ did not err in his ruling and moves the court to affirm the ALJ's decision. After a thorough review of the record, the court AFFIRMS the Commissioner's motion to affirm the ALJ's decision denying Mr. Doyle benefits. Mr. Doyle's appeal of the ALJ decision is DENIED.

## FACTS AND FINDINGS

For the purposes of this appeal, the court finds the following facts.  At the time of the ALJ's decision, Mr. Doyle was forty-four years old.  He has a bachelor of fine arts degree, and he worked as a "stand-in" actor for ten years until August 2002, when he stopped working in that capacity.  Mr. Doyle alleged disability in October 2002, due to pain in his upper neck and lower back.  Although his initial application for benefits referenced only physical ailments, Mr. Doyle has been treated since 1998 for both physical and mental illness.

<u>Mental Health History</u>

On October 30, 1989, Mr. Doyle underwent a psychological assessment by Anne Maxwell, M.A. of the UCLA Psychology Clinic.  Mr. Doyle reported that he was having a difficult time in college with reading, spelling, and comprehension.  Following the psychological assessment, Ms. Maxwell noted that Mr. Doyle suffered from anxiety and that his anxiousness appeared to contribute to his other problems.

On January 30, 1998, Ralph W. Grant, Ph.D., a psychologist, evaluated Mr. Doyle at the request of a rehabilitation counselor.  Mr. Doyle reported to Dr. Grant that he had recently been having memory problems, difficulty sleeping, difficulty concentrating, and a loss of interest in activities.  Dr. Grant conducted various examinations and noted that Mr. Doyle's verbal, arithmetic, and short term memory skills tested below the mean.  He also indicated that Mr. Doyle had "severe problems with impulse control and judgment," an "impaired ability in getting along with others," and "impulsivity with personal relations."[1]  Following his tests, Dr. Grant diagnosed Mr. Doyle with dependant personality disorder, attention deficit disorder, a reading

---

[1] (R. 105.)

disorder, a mathematics disorder, and a disorder of written expression.  Dr. Grant noted that Mr.

Doyle's Beck Depression Inventory suggested borderline depression. In addition, Dr. Grant

stated that "[w]ith adequate evaluation and a stable vocation direction, consideration might be

given to training in certain coursework at the community college level," but he did not

recommend job placement until further evaluations could be made regarding Mr. Doyle's

vocational skills.[2]

Mr. Doyle underwent a psychiatric evaluation on March 10, 1998, given by Amie Aslami,

M.D. Dr. Aslami diagnosed Mr. Doyle with major depressive disorder, a learning disorder,

dysthymic disorder, and general anxiety disorder.  Dr. Aslami prescribed anti-depression

medication and noted that therapy might be needed.  Mr. Doyle received treatment until

December 2000, when he was discharged because he was "no longer in need of service."[3]  At that

time, Dr. Aslami noted that follow-up medication was not needed.

On September 9, 2003, Mr. Doyle reported to Liz McGill, Ph.D., a psychologist, for a

consultative analysis.  Dr. McGill noted that Mr. Doyle was well oriented and had the ability to

remember both recent and remote events.  She also stated that he presented with at least average

intelligence and that he had great plans to start his own business in the future.  In addition, Dr.

McGill found that Mr. Doyle presented with normal thought processes, that his mood fell within

normal ranges, and that he had the "ability to focus, concentrate, and complete all tasks at hand."[4]

---

[2] (R. 108.)

[3] (R. 105.)

[4] (R. 167.)

Dr. McGill ultimately concluded that Mr. Doyle did not have an Axis I disorder, although she did note that he had an Axis II narcissistic personality disorder.

<u>Physical Health History</u>

On June 12, 2001, Mr. Doyle was examined by Patrice Duvernay, M.D., for complaints of transient numbness and tingling of the hands, fingers, and toes.  Dr. Duvernay found that there was a very mild asymmetry of the left upper and lower extremities which was slightly more brisk than what was found on the right side of Mr. Doyle's body.  Dr. Duvernay noted that Mr. Doyle had a history of cervical and neck pain resulting from a 1979 motor vehicle accident.  She recommended clinical observation and B12 vitamin supplements.

On November 11, 2001, Mr. Doyle returned to Dr. Duvernay, complaining again of numbness in his left upper extremities and of cervical discomfort.  Dr. Douvernay suspected that Mr. Doyle was suffering from irritated cervical nerve roots and suggested cervical spine traction and physical therapy.  Mr. Doyle underwent physical therapy on his spine from late December to late February 2002.  Following this therapy, Steven M. Wixon, PT, stated that Mr. Doyle had met his short term goals but not his long term goals and that his improvement was "fair."[5]

On February 21, 2003, x-rays were taken of Mr. Doyle's spine and read by Mark Fruin, M.D.  Dr. Fruin reported that the x-rays revealed a normal cervical and a normal lumbar spine.

On March 7, 2003, Mr. Doyle saw Richard J. Ingebretson, M.D., and complained of pain in his upper and lower back and neck, which Mr. Doyle stated was a result of his previous motor vehicle accident.  Mr. Doyle reported that he had the ability to walk up stairs, walk two or more

---

[5] (R. 129.)

miles, lift twenty to twenty-five pounds, sit for one hour, stand for one hour, drive a car, clean his

house, and cook light meals.  Dr. Ingebretson found that Mr. Doyle had no cervical, thoratic, or

lumbar tenderness and that he had a normal neurologic examination and normal tendon reflexes.

He stated that Mr. Doyle had no sensory loss, a normal regular and tandem gain, and the ability

to stoop without any limitation.  Dr. Ingebretson reported that Mr. Doyle had full upper and

lower extremity range of motion and full strength throughout his body.  Dr. Ingebretson also

stated that Mr. Doyle could arise from a seat without difficulty and that he did not experience

pain when moving.

On March 27 and April 17, 2003, Mr. Doyle presented to Health Clinics of Utah with

complaints of chronic neck and back pain.

On April 28, 2003, Kathy Hogan, a nurse practitioner, examined Mr. Doyle and requested

that x-rays be taken of his neck and spine.  X-rays taken two days later revealed that Mr. Doyle

had mild degenerative changes of the cervical spine at C5-6 with associated mild foraminal

stenosis, mild degenerative changes of the lumbar spine, and mild degenerative changes of the

left-side acromioclavicular (AC) joint.

On June 6, 2003, Tom Jones, M.D. saw Mr. Doyle regarding his back and neck injuries

and for chronic fatigue and fibromyalgia.  Dr. Jones noted that Mr. Doyle had suffered from

chronic fatigue as a result of his 1979 motor vehicle accident and that his fatigue had continued.

Dr. Jones reported that this fatigue made it more difficult for Mr. Doyle to continue his work as a

stand-in actor and that he had lately suffered from sleep dysfunction, memory impairment,

myalgia, arthralagia, post exertional malaise, and pain which "hurts all over."[6]  Dr. Jones also

noted that Mr. Doyle reported that he had pain up and down his back, hips, upper legs, knees,

ankles, and feet.

On April 3, 2005, Mr. Doyle went to the Emergency Department at LDS Hospital

complaining of tightness in the chest.  At this time, Mr. Doyle was taking Soma (a muscle

relaxant), Tramadol (a narcotic pain reliever), Darvocet, and Celebrex.  By the time he was

examined in the emergency room, Mr. Doyle presented no symptoms of tightness in the chest: he

had a normal chest x-ray and a normal EKG reading.  The examining physician diagnosed Mr.

Doyle with anxiety and provided him anti-anxiety medication.

<u>Administrative Hearing</u>

On April 6, 2005, the Commissioner held a hearing on Mr. Doyle's claims for Disability

Insurance Benefits and Supplemental Security Income benefits under the Social Security Act.  In

addition to Mr. Doyle, the ALJ heard testimony from two doctors, Dr. Kendrick Morrison and

Dr. Kristy Farnsworth, and from Dr. Orlando Rivera, a vocational expert.

Mr. Doyle testified that he suffered from both physical and mental difficulties.  He

claimed that his medications have caused him fatigue, sweats, lightheadedness, sleepiness,

headaches, and other discomforts.  Mr. Doyle claimed that he could carry out only the limited

activities of daily living and that he had to have friends drive him to the store and help manage

his home.  He reported that his work as a stand-in actor caused him pain in his upper neck and

lower back.  More precisely, Mr. Doyle stated that he could not carry out his work assignments

---

[6] (R. 149.)

because he had to lift up to fifty pounds and walk up to five hours per day at his job.  Mr. Doyle claimed that his condition prevented him from being attentive and harmed his ability to read.  In addition, he stated that his mental capability, particularly his temper problems and anxiety, prevented him from working.

Kendrick Morrison, M.D., after reviewing Mr. Doyle's medical records, also testified at the hearing.  Dr. Morrison stated that while his medical records showed mild degenerative changes in the neck and back, Mr. Doyle's injuries involved no nerve impingement and were "relatively minor."[7]  Dr. Morrison also noted that Dr. Jones diagnosed Mr. Doyle with total body pain and fibromyalgia, but stated that there were no medical findings in the records to support this diagnosis.  Noting that Dr. Jones was a retired OB/GYN, Dr. Morrison stated that he was "not sure where he got the fibromyalgia, chronic fatigue" diagnosis since "nothing in the chart supports that claim."[8]  Dr. Morrison also testified that the findings by the other physicians were normal and that he did not think Mr. Doyle met the requirements for a severe impairment.

Kristy Farnsworth, Ph.D. also testified at the hearing regarding Mr. Doyle's mental impairments.  Dr. Farnsworth reviewed the mental health records supplied by the medical providers and noted that Mr. Doyle had been diagnosed with a personality disorder and disorder of reading, writing, and mathematical abilities.  Although she noted that Mr. Doyle had mental disorders and cognitive disabilities, Dr. Farnsworth testified that in her opinion there was not sufficient evidence to find that these disorders rose to the level of a severe impairment as listed in

[7] (R. 268.)

[8] (R. 269.)

the statute.[9]

Dr. Rivera, a vocational expert, testified regarding the job of a stand-in actor.  Dr. Rivera classified this job as "light and skilled."[10]  The ALJ posed a hypothetical question in which he asked Dr. Rivera if a person suffering from the same mental and physical impairments as Mr. Doyle would be able to perform the job of a stand-in actor.  Given these facts, Dr. Rivera stated that such a person could fulfill this employment position.  Upon questioning by Mr. Doyle's attorney, Dr. Rivera testified that a person who could not follow more than a two-step instruction would not be able to fulfill the job of a stand in actor.[11]

On June 8, 2005, the ALJ issued his decision and found that Mr. Doyle did not meet the requirements needed to claim disability benefits under the Social Security Act.  The ALJ based his decision on the five-step evaluation, which is to be performed under 20 C.F.R. § 404.  The ALJ noted that step two required that the plaintiff have a "severe" impairment and proceeded to analyze Mr. Doyle's claim under this test.  The ALJ found that neither the physical nor mental impairments suffered by the plaintiff were considered "severe" under 20 C.F.R. § 404.1520, and he consequently denied Mr. Doyle's claim.

Mr. Doyle appeals the Commissioner's final decision to this court, seeking review of the finding that Mr. Doyle does not qualify for Disability Insurance Benefits or Supplemental Security Income under the Social Security Act.  First, Mr. Doyle argues that the ALJ failed to

---

[9] (R. 274-79, 282-83.)

[10] (R. 284.)

[11] (R. 291.)

develop the record regarding Mr. Doyle's fibromyalgia and chronic fatigue syndromes.  Second, he argues that the ALJ erred by finding that Mr. Doyle's learning disorder, personality disorder, and shoulder conditions were not "severe" under the applicable statute.  Third, Mr. Doyle claims that the ALJ erred in determining that Mr. Doyle had a mild limitation in his ability to function mentally.  Fourth and Fifth, Mr. Doyle attacks the ALJs' determination that he suffers no side affects from his medications and that he can reach overhead without limitations.  Sixth, Mr. Doyle claims that the ALJ erred because the hypothetical question he posed to the vocational expert did not include all the necessary information required for the ALJ to rely on the vocational expert's opinion.  Seventh, Mr. Doyle claims that the ALJ erred in determining that Mr. Doyle has the residual functional capacity to perform his past relevant work of stand-in actor.  Finally, Mr. Doyle contends that the ALJ committed reversible error by not determining that his combination of impairments together made him severely disabled.

The Commissioner responds that substantial evidence supports the ALJ's finding that Mr. Doyle was not severely disabled, asserting in particular that the medical evidence is inconsistent with Mr. Doyle's claim of total disability.  The Commissioner asserts that the ALJ properly developed the record with regard to Mr. Doyle's diagnosis of chronic fatigue and fibromyalgia.  The Commissioner also argues that the ALJ properly considered Mr. Doyle's functional mental limitations.  Finally, the Commissioner maintains that the ALJ's determination that Mr. Doyle maintained the residual functional capacity to perform his past work as a stand-in actor is supported by substantial evidence.

**STANDARD OF REVIEW**

9

The court reviews Mr. Doyle's appeal of the Commissioner's decision "to determine if the factual findings are supported by substantial evidence in the record and whether correct legal standards were applied."[12]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  The court "may neither reweigh the evidence nor substitute [its] discretion for that of the [ALJ]."[14]  Where evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[15]  Nonetheless, the court is to "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[16]

## DISCUSSION

### A. The ALJ did not Fail to Develop the Record Regarding Mr. Doyle's Chronic Fatigue

Mr. Doyle contends that the ALJ committed reversible error by not fully developing the record with respect to Dr. Jones' diagnosis of fibromylagia and chronic fatigue.  Specifically, petitioner contends that the ALJ erred by not referencing this diagnosis in his record, by failing to order the two missing pages of medical records from Dr. Grant, and by failing to order a

---

[12] *Doyal v. Barnhart*, 331 F.2d 758, 760 (10th Cir. 2003).

[13] *Id.*  (citations and internal quotation marks omitted).

[14] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002).

[15] *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[16] *Grogan v. Barnhart*, 39 F.3d 1257, 1261 (10th Cir. 2005).

consultative exam, which Mr. Doyle argues was necessary for an informed decision.[17]  Mr. Doyle

cites *McGofffin v. Barnhart* for the proposition that the ALJ has an obligation to contact the

treating physician and ask him to clarify reports if the medical evidence is insufficient.[18]  In

addition, Mr. Doyle cites the Social Security Administration's own rules where it states that it

will seek additional information when a medical report (1) contains a conflict or ambiguity that

must be resolved (2) does not contain all of the necessary information or (3) does not appear to

be based on medically acceptable clinical and laboratory diagnostic techniques.[19]

     The court is unpersuaded by Mr. Doyle's arguments because a close analysis of valid case

law and of the Social Security Administration's rules indicate that the ALJ did not have a duty

either to order a consultative analysis or to contact Dr. Jones for more medical information in this

case.  First, the Social Security Administration states that an ALJ will seek further evidence when

"the report from [the] medical source contains a conflict or ambiguity *that must be resolved* [or]

*the report does not contain all the necessary information*."[20]  Case law also reveals that an ALJ is

not automatically required to order additional reports and medical examinations simply because

not all medical reports line up.  In *Matthews v. Bowen*, the Eighth Circuit stated that the federal

regulations "do not require . . . the ALJ to order a consultative exam of every alleged impairment.

They simply grant the ALJ the authority to do so *if the existing medical sources do not contain*

---

[17] Pl.'s Opening Br. 15–18.

[18] 288 F.3d 1248, 1252 (10th Cir. 2002).

[19] 20 C.F.R. § 404.1512(e)(1).

[20] *Id.* (emphasis added).

*sufficient evidence to make a determination*."[21]   The Tenth Circuit echoed this conclusion when it stated that the ALJ's duty to develop the record does not require "reversal[] in any matter where the ALJ fails to exhaust every potential line of questioning."[22]

Both the Social Security regulations and case law indicate that an ALJ must order additional reports or testing only when such information is needed for him or her to make an informed decision.  Consequently, if the missing information is either unnecessary or would not alter the ALJ's decision, the ALJ has no obligation to obtain that information.  In this case, substantial evidence on the record as a whole indicates that it was reasonable for the ALJ to decide that he did not need to order additional records or reports.  Dr. Ingebretson, who saw Mr. Doyle on March 7, 2003, found that Mr. Doyle had a normal, regular, and tandem gait, and the ability to stoop without any limitation.[23]  Dr. Ingebretson also reported that Mr. Doyle had full upper and lower extremity range of motion, full strength throughout his body, and that he did not experience pain when moving.[24]  Equally important, Mr. Doyle himself reported that he had the ability to walk up stairs, walk two or more miles, lift 20-25 pounds, sit for one hour, stand for one hour, drive a car, clean his house, and cook light meals.[25]

Thus, both Dr. Ingebretson's and Mr. Doyle's own self-reported statements contradict Dr.

---

[21] 879 F.2d 422, 424 (8th Cir. 1989) (emphasis added).

[22] *Glass v. Shalala*, 43 F.3d 1392, 1398 (1994) (quoting *Henrie v. U.S. Dep't of Health and Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)).

[23] (R.140-42.)

[24] (R.140-42.)

[25] (R.140-42.)

Grant's analysis.  The Tenth Circuit has held that when medical information conflicts, it is for the ALJ to resolve the ambiguity.[26]  The court finds that the ALJ acted reasonably when reconciling Dr. Ingebretson's report and Mr. Doyle's statements with Dr. Grant's findings.  In addition, to the fact that Dr. Ingebretson found that Mr. Doyle could carry out many activities, Dr. Morrison, in her testimony before the ALJ, questioned whether Dr. Grant was qualified to make a chronic fatigue diagnosis.[27]  Consequently, there is substantial evidence in the record for the ALJ to deem it unnecessary to obtain more reports or medical information.  This court finds that the ALJ sufficiently developed the record regarding Mr. Doyle's fibromyalgia and chronic fatigue.

In addition to failing to request additional information and a consultative examination, Mr. Doyle asserts that the ALJ committed an abuse of discretion by not even addressing his chronic fatigue in the final report.  This claim also fails.  In his decision, the ALJ stated that Mr. Doyle was suffering from fatigue and that his "fibromyalgia is also continually changing."[28]  The record indicates that the ALJ took Mr. Doyle's fibromyalgia into account when making his decision; unfortunately for Mr. Doyle, the ALJ was more persuaded, based on the record as a whole, that the plaintiff retained the ability to complete basic work requirements.[29]  Because the medical evidence, patient reports, and expert opinions show that a reasonable person could rule as the ALJ did, this court will not second-guess this decision.

---

[26] *Casias v. Sec'y of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

[27] (R. 268-69.)

[28] (R. 18.)

[29] (R. 18-19).

*B. The ALJ did not Err by Finding that Mr. Doyle's Learning Disorder, Personality Disorder, and Shoulder Conditions were not "Severe."*

Mr. Doyle claims that the ALJ erred by not finding his learning disorder, personality disorder, and shoulder conditions to be "severe" under the meaning of the applicable statute. Specifically, the plaintiff makes two assertions: first, that there is sufficient medical evidence to indicate that Mr. Doyle has a severe impairment in all three of these areas, and second, that the ALJ committed reversible error by failing to even address Mr. Doyle's shoulder impairment.[30]

As defined by the Regulations, an impairment is severe if it "significantly limits the claimant's ability to do basic work activity."[31]  The plaintiff cites a Third Circuit decision for the proposition that any doubt regarding whether a severe impairment exists should be resolved in favor of the claimant.[32]  Nonetheless, there is substantial evidence on the record to support the ALJ's decision and to preclude the doubt needed to find for the plaintiff.

The court recognizes that Dr. Grant diagnosed Mr. Doyle with severe mathematical and concentration problems and that Dr. Grant, Dr. Aslami, and Dr. McGill diagnosed Mr. Doyle with a personality disorder.[33]  However, a diagnosis of a severe impairment does not automatically mean such an impairment significantly limits a person's ability to carry out basic work activities.  The Tenth Circuit has made it clear that medically diagnosed impairments are

---

[30] Pl.'s Opening Br. 19

[31] 20 C.F.R. § 404.1520(c).

[32] *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004).

[33] (R. 105, 109, 120, 168.)

not per se disabling.[34]  Following this analysis, the court finds that the ALJ did not commit

reversible error because in viewing the record as a whole, there is substantial evidence that Mr.

Doyle does not have a severe mental, personality, or shoulder impairment within the meaning of

the statute.  Each of the impairments will be addressed in turn.

*1. Mental impairment*

The ALJ appears to have relied heavily on Dr. McGill's thorough consultative medical

examination regarding Mr. Doyle's mental impairment.[35]  Following her examination, Dr.

McGill reported that Mr. Doyle had the ability to remember recent and remote events, showed no

evidence of disordered thinking, and had the ability to focus, concentrate and complete all tasks

at hand.[36]  In addition, Dr. McGill noted that Mr. Doyle presented with at least average

intelligence, that he was "quite capable,"and that he had plans to start his own business.[37]  It

would appear that Dr. McGill's evaluation may be in conflict with previous medical reports.[38]

Nonetheless, conflicting medical reports are for the ALJ, not the court, to resolve.[39]  The ALJ

considered all of the medical evidence regarding Mr. Doyle's mental impairment.  Furthermore,

Dr. Farnsworth, after reviewing Mr. Doyle's mental health records, testified that there was not

---

[34] *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

[35] (R. 17.)

[36] (R. 167.)

[37] (R. 167-68.)

[38] (R. 104-05.)

[39] *See Casias v. Sec'y of Health & Human Services*, 933 F.2d 799 (10th Cir. 1991).

enough evidence to determine that he had a severe impairment under 12.02(a-b) of the Social Security Regulations.[40] Consequently, given Dr. McGill's report and Dr. Farnsworth's expert opinion, and the ALJ's review of all of the medical evidence, this court finds that there is substantial evidence in the record to support the ALJ's decision regarding Mr. Doyle's mental impairment.

The court notes that in addition to claiming that Mr. Doyle was severely impaired, the plaintiff also claims that the ALJ committed reversible error by finding that Mr. Doyle had only mild limitations in several areas of his mental functioning. In light of Dr. McGill's reports and Dr. Farnsworth's expert testimony on this subject, this court is persuaded that the ALJ's determination that the plaintiff has only mild mental limitations is probably correct. Nevertheless, this finding is immaterial because the relevant issue is not whether Mr. Doyle has more than a mild impairment, but instead whether he is severely impaired according to the relevant statute.  In any event, this court is not to reweigh the evidence; instead, it must look for substantial evidence that the ALJ made a reasonable determination.  Even if the evidence as a whole indicated that Mr. Doyle has more than a mild mental limitation, this court is satisfied that the ALJ made a reasonable determination when finding that his mental impairment was not severe under step two of the Social Security Regulations.

*2. Personality Disorder*

This court also finds that substantial evidence supports the ALJ's finding regarding Mr. Doyle's personality disorder.  Although he has been diagnosed with narcissistic personality

---

[40] (R. 274.)

16

disorder, Mr. Doyle has not shown how this disorder prevents him from carrying out basic work activities. Evidence of impairments are not per se disabling.[41] There is sufficient evidence in the record indicating that Mr. Doyle's personality disorder does not rise to the level of severe under the statute. Dr. McGill, who diagnosed Mr. Doyle with a personality disorder, did not indicate that this disorder would prevent Mr. Doyle from finding employment.[42] In addition, Dr. Farnsworth, after reviewing all of Mr. Doyle's mental and emotional health records, testified that in her opinion, there was not enough evidence to conclude that Mr. Doyle's impairments were severe under the statute.[43] Given Dr. McGill's report and Dr. Farnsworth's testimony, this court finds that the ALJ's decision is supported by substantial evidence.

*3. Shoulder impairment*

Finally, this court finds that there is substantial evidence to indicate that Mr. Doyle's shoulder impairment was not severe under the regulations. Although the ALJ did not specifically reference Mr. Doyle's injury in his report, such an omission does not constitute reversible error because there is substantial evidence on the record indicating that Mr. Doyle's shoulder injury did not prevent him from completing basic work activities. This conclusion is supported both by Dr. Ingebretson's report and by Mr. Doyle's statements made during that visit. As noted, Dr. Ingebretson reported that Mr. Doyle had normal strength and range of motion in his upper

---

[41] *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

[42] (R.165-71, 183.)

[43] (R. 274.)

extremities.[44]  When he went to see Dr. Ingebretson, Mr. Doyle himself reported that he had no upper body restrictions and that he could lift twenty pounds.[45]  In addition, Dr. Morrison, after reviewing Mr. Doyle's medical records, testified that his physical injuries were relatively minor.[46]  Therefore, after a thorough examination of the record, this court finds that there is substantial evidence to support the ALJ's finding that Mr. Doyle's physical impairments – including his shoulder difficulty – did not prevent him from performing basic work functions.

### C. The ALJ took Note of Mr. Doyle's Complaints that he Suffered Severe Side Affects from his Medications

Mr. Doyle also claims that the ALJ committed reversible error by determining that he does not suffer severe side affects from his pain medications.  The record indicates that Mr. Doyle had complained that his medications were causing him fatigue and sleeplessness.[47] Contrary to Mr. Doyle's assertions, however, the ALJ made specific note of the plaintiff's complaints in this area. The ALJ stated in his final report that as a result of his medicine, Mr. Doyle had reported suffering from fatigue and an inability to function properly.[48] Thus, the ALJ was aware of and noted that Mr. Doyle suffered side affects from his medication.  The record indicates that the ALJ took this factor into account when making his final decision.

### D. There is Substantial Evidence to Support the ALJ's Finding that Mr. Doyle can Reach

---

[44] (R. 142.)

[45] (R. 140-41.)

[46] (R. 268.)

[47] (R. 62, 83, 91.)

[48] (R. 18.)

*Overhead Without Substantial Limitations*

Mr. Doyle also claims that there is not substantial evidence to support the ALJ's

conclusion that he can reach over his head without substantial limitation.  According to Mr.

Doyle, because the medical evidence indicated that he had significant, documented pain in his

left shoulder, the ALJ committed reversible error.  This court finds, however, that a reasonable

person could find that Mr. Doyle has the ability to reach above his head without substantial

limitation.  Dr. Ingebretson noted in his medical report that Mr. Doyle could use both his left and

right hands overhead.[49]  Also, Mr. Doyle reported to Dr. Ingebretson that he had the ability to lift

twenty to twenty-five pounds and he denied having any upper extremity functional limitations.[50]

An ALJ may rely on a claimant's own statement of his limitations when evaluating his disability

claim.[51]  Given Dr. Ingebretson's medical report and Mr. Doyle's own statements to him, this

court finds that the ALJ acted reasonably in making this determination.

*E. The ALJ's Hypothetical Included all of the Necessary Information Required for the ALJ to Rely on the Vocational Expert's Opinion and He Sufficiently Questioned the Vocational Expert Regarding the Physical Demands of the Job of a Stand-In Actor*

Mr. Doyle also asserts that the ALJ committed reversible error by presenting a less-than-

thorough hypothetical to the vocational expert, Dr. Rivera.  Specifically, the plaintiff claims that

the ALJ failed to include Mr. Doyle's learning disability, anxiety disorder, and shoulder

impairment in the hypothetical question he posed to the vocational expert.  It is true that if the

---

[49] (R. 140.)

[50] (R. 140-41.)

[51] *Sykes v. Bowen*, 854 F.2d 284, 286 (8th Cir. 1988).

ALJ is to rely on a vocational expert's opinion based on a hypothetical, the ALJ must precisely set out the claimant's individual physical and mental impairments.[52]  This court, however, is not persuaded that the ALJ neglected to include pertinent physical and mental ailments in his hypothetical.  An examination of the record indicates that the ALJ was actually quite thorough. In fact, he specifically took into account Mr. Doyle's learning disability, anxiety disorder, and shoulder impairment in his hypothetical.[53]  First, the ALJ included Mr. Doyle's learning impairments when he asked the vocational expert if a person with a mild limitation concerning the ability to concentrate, remember work procedures, perform duties within a schedule, and sustain a routine without supervision, could perform the job of a stand-in actor.[54]  In addition, the ALJ stated in his hypothetical that the person in question was moderately impaired in his ability to deal with stress.[55]  The record clearly indicates that the ALJ took Mr. Doyle's mental limitations into account when creating his hypothetical.

The ALJ also took Mr. Doyle's anxiety disorder into account.  The ALJ specifically requested that the vocational expert factor in features of a personality disorder with dependant and narcissistic components, a mild limitation concerning an ability to get along with others and with the general public, and a moderate limitation in dealing with stress.[56]  Finally, the record

---

[52] *Evans v. Chater*, 364 F.3d 501, 506 (3d. Cir. 2004).

[53] (R. 285-86.)

[54] (R. 286.)

[55] (R. 286.)

[56] (R. 286.)

indicates that the ALJ took into account Mr. Doyle's shoulder condition when presenting his hypothetical – the ALJ noted that the hypothetical person had the ability to reach above the shoulders frequently.[57]   Although Mr. Doyle claims that he has a severe shoulder impairment, the ALJ (as evident in his hypothetical) was clearly more persuaded by Dr. Ingebretson's report that Mr. Doyle had full range of motion in his upper body.   Because this statement is sufficiently supported by medical evidence, this court finds that the ALJ's hypothetical was thorough and his decision to classify Mr. Doyle as not having a shoulder impairment was reasonable.   Failure to agree with all of the plaintiff's medical assertions in the creation of a hypothetical does not constitute error.

In addition, Mr. Doyle claims that the ALJ failed to question the vocational expert regarding the physical demands of the occupation of a stand-in actor.   This court is persuaded that the record indicates the opposite to be true.   The ALJ questioned Dr. Rivera as follows:

> Q: What are the jobs the claimant has performed in the past 15 years?  Give me the job title, skill level, and exertional level for each job.
>
> A: Well, your Honor, I reviewed the record, and the only job that appears there is that of a stand-in actor.   That is classified as light and skilled.
>
> Q: Okay.[58]

Mr. Doyle claims that the ALJ should have questioned the vocational expert regarding the pain and discomfort that he felt as he tried to carry out his job as a stand-in actor.   The purpose of a

---

[57] (R. 286.)

[58] (R. 284-85.)

vocational expert, however, is to testify regarding the normal demands of a given occupation,[59] and that is precisely what the expert did in this case.[60]   The court therefore finds that the ALJ's questioning of the vocational expert was sufficiently thorough.

### F. The ALJ Acted Reasonably When he Determined that Mr. Doyle had the Residual Functional Capacity to Perform his Past Relevant Work of a Stand-In Actor

The plaintiff contends that the ALJ committed reversible error by finding that Mr. Doyle had the residual functioning capacity to perform the work of a stand-in actor.  Mr. Doyle correctly indicates that in determining whether a claimant can return to his or her prior work, the ALJ must consider three factors: (1) the physical and mental demands of the past occupation; (2) the claimant's residual functional capacity; and (3) whether the claimant's residual functional capacity permits the plaintiff to perform the past relevant work.[61]  Based on this criteria, Mr. Doyle claims that the ALJ erred in making this determination because of the physical and mental demands of his employment as a stand-in actor.

Even assuming that the plaintiff's assertion is correct and that his current impairments do not allow him to return to his previous, specific job, Mr. Doyle apparently overlooks a very important factor in this analysis.  The Tenth Circuit has held that the claimant "bears the burden of proving his ability to return to his . . . particular former occupation *as that occupation is generally performed throughout the national economy*."[62]  Thus, the burden of proof was on Mr.

---

[59] *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

[60] (R. 284-91.)

[61] *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

[62] *O'Dell v. Shalala*, 44 F.3d 885, 859-60 (10th Cir. 1994) (emphasis added).

Doyle to prove that the national exertion standard for stand-in actors exceeded his mental and physical abilities.  Because Dr. Rivera testified that, at the national level, the work of a stand-in actor is considered light,[63] and because the plaintiff has offered no proof to the contrary, this court finds that the record contains substantial evidence that the ALJ made a reasonable determination in this case.

### G. The ALJ Considered Mr. Doyle's Impairments in Combination

Lastly, Mr. Doyle contends that the ALJ committed reversible error by failing to consider his mental and physical impairments in combination.  Plaintiff correctly states that claimants may be disabled by an impairment or a combination of impairments[64] and that as a general rule the ALJ is to consider these impairments together as well as individually.[65]  The court, however, finds that the ALJ considered Mr. Doyle's mental and physical disabilities in combination with one another.

First, the ALJ made it very clear in his hypothetical to Dr. Rivera that he was to consider Mr. Doyle's impairments together.  The ALJ listed each of Mr. Doyle's physical impairments, and then stated: "Now how do these impairments impact on a person's mental residual functional capacity?"[66]  Following this question, the ALJ proceeded to list Mr. Doyle's mental and

---

[63] (R. 284.)

[64] 42 U.S.C.A. § 423 (d)(2)(B).

[65] *Barrett v. Barnhart*, 335 F.3d 1065, 1068 (7th Cir. 2004).

[66] (R. 286.)

emotional limitations.[67]  In his hypothetical, the ALJ combined Mr. Doyle's mental, emotional,

and physical ailments.  Moreover, the ALJ's final decision indicates that he also considered Mr.

Doyle's impairments in combination.  When setting forth the facts of the claim, the ALJ listed

Mr. Doyle's emotional, mental, and physical limitations and ultimately concluded that in his

opinion these impairments "either singly or in combination" did not rise to the level of "severe"

under the Social Security Regulations.[68]  This court therefore finds that the ALJ sufficiently

considered Mr. Doyle's impairments in combination with one another.

## CONCLUSION

The court, given the evidence provided in the record, finds that the ALJ's decision

denying Mr. Doyle's claim for Disability Insurance Benefits and Supplemental Security Income

is supported by substantial evidence.  The court also finds that the ALJ used correct legal

standards.  Accordingly, the court AFFIRMS the Commissioner's decision.  The Clerk's Office

is directed to close this case.

DATED this 28th day of March, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[67] (R. 286.)

[68] (R. 16.)